Taft, J.,
dissenting. Under the provisions of the agreement involved in the instant case, the highway director “shall act, pursuant to * * * Section 5501.112 of the Revised Code, as agent for the [school employees retirement] board to expend at least $775,000 but not in excess of $815,000.”
Section 5501.112, Revised Code, provides that an agreement made thereunder “may not extend beyond the then current two-year period for which appropriations to the Department of Highways shall have been made by the General Assembly [that period in the instant case admittedly expires on June 30,1961]”; that ‘ ‘ such agreements shall provide that * * *, during the effective period of each such agreement the director shall purchase such property from the Industrial Commission or retirement board whenever * * * a highway improvement contract [requiring such property] is let, or upon expiration of such agreement, whichever date is earlier ’ ’; and that ‘ ‘ such agreements may contain any other provisions * * * necessary to carry out the purposes of such agreements as indicated in this section.”
The agreement involved in the instant case provides in part:
“3. * * * Prior to the letting of a * * * contract * * *, the director shall purchase from the board all parcels acquired by the board for the purpose of being utilized in the improvement for which such contract is let. Upon the final expiration of this agreement, following any renewal period or periods, if any, the director shall purchase from the board all parcels acquired by the board pursuant to this agreement.
11 * * *
“7. This agreement covers the period *' * * through June 30,1961, but the director shall have and may exercise the option to renew this agreement for an additional period or periods of not to exceed two years each * * *. This agreement may not # * * be renewed so as to extend * * # beyond five years * * #.
“8. The director shall make such arrangements, reasonably in advance of the terminal date of this agreement, as will enable him on that date, or in advance thereof, to meet his obligations under this agreement by actual payment to the board, on or before such terminal date, for all purchases made or required to be made by him from the board upon the termination of this agreement, if, for any reason, this agreement is not renewed.” (Emphasis added.)
*469 Neither the statute nor the agreement provide or contemplate that the state or the director shall have any obligation to pay anything at any definite time except as indicated by the foregoing portions quoted from them.
It is apparent therefore that the statute purports to authorize an agreement under which neither the state nor its director would be required to purchase property (other than that acquired for improvements as to which contracts had. been let) from the board before expiration of the agreement at the end of the “period for which appropriations *' * * shall have been made.” Under such an agreement, the state’s obligation (through the director) to pay for such property would not arise until the instant that the legislative appropriation for its payment had lapsed and thereby vanished.
Except possibly for the provisions quoted from paragraph 8 of the agreement, the same conclusion would necessarily follow with respect to the agreement involved in the instant case. If we should determine that provisions such as those in paragraph 8 of that agreement are authorized by the statute, then we may be able to construe those provisions so as to reach the conclusion that the state or its director is to have an obligation to pay for property (other than that acquired for improvements as to which contracts had been let) on the terminal day of the agreement (i. e., June 30, 1961), which obligation is supported on that one day by a valid appropriation. Certainly, even those provisions of paragraph 8 of the agreement will not support any implication of any obligation of the state or its director to make any earlier payment. If any such obligation is not met by a payment that the director may make before but is only obligated to make on that one day (or by a renewal agreement supported by an appropriation during this biennium by the next General Assembly as pointed out in the majority opinion), then, because of Section 22 of Article II of the Ohio Constitution as well as by reason of the terms of Section 12 of Amended Substitute House Bill 831 enacted by the 103rd General Assembly, which bill is supposed to provide the appropriation for the payment of that obligation, that appropriation will, at the end of that one day, lapse and thereby vanish. As a consequence, the obligation of the director to pay will thereupon on July 1, 1961, *470 become a debt of tbe state admittedly forbidden by tbe provisions quoted in the majority opinion from Article VIII of our Constitution.
As stated in the majority opinion, “an obligation supported by an appropriation but remaining unpaid at the end of a biennium accrues into a debt at such time.”
This is also recognized in the relator’s brief where it is stated that “if any claim remains unpaid at the end of a biennium for which an appropriation for it has been made, then such claim becomes a debt of the state. ’ ’
Also in State v. Medbery, 7 Ohio St., 522, it is said in the opinion at page 530:
“ * * * if appropriations were made, but the claims authorized to be paid * * * were not paid * * * such claims would * * * become debts.”
To the same effect is 2 Opinions of Attorney General (1927), 1242, No. 725.
It is possible, as indicated by the foregoing analysis and by the able analysis set forth in the majority opinion, to reach the conclusion that the obligation imposed by this agreement on the state (through its highway director) to pay for property (other than that acquired for improvements as to which contracts had been let) might, prior to its performance, be an enforcible obligation to pay for such property for the one day upon which that obligation accrued and yet might not be for that one day a debt forbidden by Article VIII of the Constitution. However, if not paid on that one day, such obligation would necessarily thereafter become such a forbidden debt. It is difficult to believe that our General Assembly would have authorized the investment of any trust funds of the Industrial Commission or of any of the retirement boards under any such agreement if it had understood the tenuous extent of the state’s obligation to repay those funds that necessarily results from the limitations set forth in Sections 1, 2 and 3 of Article VIII and Section 22 of Article II of our Constitution.
It may be that this agreement can be construed to impose as much as a one-day obligation to pay for those parcels not purchased by the director prior to the termination of the agreement, which one-day obligation would not on that one day be a *471 debt prohibited by tbe provisions of our Constitution. However, there are no words in our statutes that even suggest that the General Assembly intended to approve such an elusive and vanishing and perhaps even illusory obligation of the state as an appropriate investment for the trust funds administered by the Industrial Commission or by the Public Employees, the State Teachers or the School Employees Retirement Boards.